## NELSON et ux, v. KING.

No. 14119—Opinion Filed July 24, 1923.

1. Liens — Equitable Lien — Agreement to Give Mortgage to Secure Loan — Evidence—Insufficiency.

In order to establish a lien on certain premises to secure the amount of a loan, there must have been an unequivocal agreement between the parties that a mortgage was to be executed to secure the loan; and that fact must be established by a preponderance of the evidence. In this case, the plaintiff testified that there was an agreement at the time the loan was made that a mortgage should be executed on certain premises occupied by the defendants as their home. This was denied flatly by the testimony of both defendants. Held, that plaintiff failed to establish the fact that defendants were to give a mortgage on their home to secure said loan, and plaintiff was not entitled to a lien on the premises.

2. Pleading—Variance—Proof—Waiver of Error.

The answer of the defendants, as to the fifth paragraph of the petition, setting up that the defendants had agreed to mortgage the premises, was in the nature of a general denial, but on the trial defendants were permitted without objection to introduce evidence tending to show that the premises sought to be impressed with the lien were the homestead of the defendants. Held, that plaintiff could not raise the question on appeal that the answer did not specially plead that the premises were a homestead, but will be considered to have waived that question, as the answer could properly have been amended, if counsel had raised the question at the trial; and the case will not be reversed solely because of such variance between the proof and the pleadings.

3. Homestead—Lien—How Created.

Article 12 of the Constitution, sections 1 and 2, Williams' Annotated Constitution, defines a homestead and the manner in which it could be sold or incumbered, and requires that the husband and wife must join in the same conveyance and waive the homestead in order to create a valid lien on same.

4. Appeal and Error—Questions Presented for Review—Variance — Failure to Object.

Though there be a variance between the allegations of an answer and the facts proven without objection at the trial, yet, if it be a case where an amendment to conform to the proof should have been allowed, the judgment will not be reversed solely because of such variance.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Okmulgee County; Mark L. Bozarth, Judge.

Action by Elnita King against R. L. Nelson and Rosa Lee Nelson to recover on four promissory notes of $1,000 each and impress the homestead of defendants with a lien for said amount. Judgment for plaintiff, and defendants bring error. Reversed.

J. C. Evans, for plaintiffs in error.

Virgil E. Riddle, for defendant in error.

Opinion by MAXEY, C. This action was brought by Elnita King against R. L. Nelson and Rosa Lee Nelson to recover on four promissory notes of $1,000 each executed on May 4, 1920, bearing eight per cent. interest from date, and ten per cent. attorneys' fee in case the same should be placed in the hands of an attorney for collection. These notes are set out and described in the 1st, 2nd, 3rd, and 4th causes of action. A fifth cause of action of the petition sets up that at the time said notes were given by defendants to plaintiff, it was understood and agreed that defendants should execute a mortgage on the east 50 feet of lot 8, block 35, of the original townsite of Okmulgee to secure the payment of said notes, subject to a first mortgage in favor of Okmulgee Building & Loan Association. The defendants in their answer admit the execution of the four promissory notes and admit that they have not been paid except $80 paid on interest, and deny generally and specifically all of the statements and allegations contained in plaintiff's 5th cause of action, and ask that plaintiff be denied a lien against the property described in plaintiff's petition. The record does not show that any reply was filed to the answer of the defendants. On the 7th day of June, 1922, the case was tried to the court. The plaintiff testified that she was the wife of Pinkney Nelson, the son of defendants, and

that about May 4, 1920, the defendant R. L. Nelson came to her house and asked her if she could make him a loan of $4,000, and stated that he would mortgage his home to her for $4,000; that she told him she would loan him the $4,000 and gave him a check on her account for said sum; that the defendant, R. L. Nelson, afterwards brought her the four notes for $1,000 each, signed by himself and his wife, Rosa Lee Nelson; that she took the notes and placed them in the safe and supposed the mortgage was with the notes, and did not know that the mortgage was not with the notes until in November, 1921. She does not claim to have ever discussed with Rosa Lee Nelson about the matter at all. It appears from the evidence that she had sold a one-sixteenth interest in her royalty rights from some lands for the sum of $15,000. It was out of this money that she made the loan to defendants of $4,000. Some time after this loan was made, she was declared an incompetent by the county court of Okmulgee county. This proceeding was had in the county court about November, 1921, but at sometime between November, 1921, and June, 1922, she was restored to competency; and on the trial of this case, which was brought by her guardian, she appeared in her own behalf personally, advising the court that she was no longer under guardianship, but that her competency had been restored by the county court. The evidence of the plaintiff is the only evidence with reference to the defendants promising to give a mortgage, and her testimony consists of the simple statement that she (R. T. Nelson) was to give her a mortgage on his home to secure the payment of the notes for $4,000. R. L. Nelson, one of the defendants, testified that he borrowed the $4,000 and gave his promissory notes, being the ones sued on, to the plaintiff, but that he did not promise to mortgage his home and that there was nothing said by plaintiff about a mortgage; that he never promised to mortgage his home to her and never intended to mortgage it because it already had a loan to the Building & Loan of $3,500, and that he did not intend to incumber it further. Rosa Lee Nelson, the wife of defendant R. L. Nelson, testified that she had nothing to do with the notes other than signing the same; that she was at Muskogee when the loan was negotiated, and when she returned her husband asked her to sign the notes and that she did so; that nothing was said about a mortgage, and that she would not have signed a mortgage on their homestead. She was asked particularly about the premises that it is

claimed a mortgage was to have been executed on, and stated that it was their homestead and that she would not incumber the homestead further than it was already incumbered with the Building & Loan mortgage. She stated that she never talked to the plaintiff about the loan and had no connection with it except the signing of the notes. She stated that she and her husband were living on the premises on May 4, 1920, and making it their homestead; that it was the only home they had, and that they built a home and moved into it some time prior to May 4, 1920, and had continued to reside in it as their home up to the time of the trial in this case; that at no time did she agree to sign a mortgage to the plaintiff on the homestead and would not have done so had she been requested. This is, in substance, the testimony offered at the trial.

We have read the testimony very carefully to determine whether there was an agreement between the defendants and plaintiff, with reference to giving a mortgage on the premises, herein before described, to secure the loan of $4,000, and also to determine from the testimony whether the premises in controversy were the homestead of the defendants, and have reached the conclusion from the testimony that it falls far short of establishing the fact that there was an agreement between plaintiff and R. L. Nelson that he would execute a mortgage on the premises to secure the payment of the $4,000. The testimony of the plaintiff is very vague and indefinite. The burden was on her to establish a lien on the premises. The defendants flatly denied any such agreement, and stated that nothing of the kind was asked by plaintiff, and the matter of securing the loan was not discussed in any way. In the face of this testimony, we hold that the alleged agreement to execute a loan is not established. On the other branch of the case, the testimony of both Mr. Nelson and his wife, Rosa L. Nelson, is to the effect that the premises sought to be impressed with the lien are their homestead. Mrs. Nelson was examined more fully on this question than R. L. Nelson and her testimony as to it being their homestead is clear and uncontradicted, and is sustained by the fact that they moved into the house on these premises as soon as the house was completed and had continued to live there ever since, showing there is no question about the homestead character of the premises in controversy. Counsel for defendant in error has cited quite a number of cases from other jurisdictions as to what was neces-

sary to establish the homestead character of the premises. But in those cases, the evidence of the homestead character of the premises sought to be claimed was not established by such testimony as is in this case. In some of those cases the parties claiming a homestead were not living on it, never had lived on it, and there had been no declaration or intention expressed of using it as a homestead. We think the testimony clearly establishes the homestead character of the premises sought to be impressed with the lien. This being so, the only way that a lien could be given on the homestead would be for the husband and wife to join in the same conveyance, waiving the homestead. Nothing of that kind appears in this case. But, on the contrary, it conclusively appears that Mrs. Nelson knew nothing about any agreement between her husband and the plaintiff, if there was such an agreement, that a mortgage was to be executed. The plaintiff testified that she had no conversation or understanding with Mrs. Nelson about the loan or about any mortgage and without her knowledge and consent in the manner provided by law, no lien on the homestead could be created.

The makers of our Constitution thought it of sufficient importance to define a homestead and the manner in which it could be sold or incumbered by article 12 of the Constitution, secs. 1 and 2, William's Annotated Constitution. It is unnecessary to quote these sections, as they are accessible to all members of the bar and other persons that desire to read them.

The plaintiffs in error group the several assignments of error under one head and say that the case presents only one question for determination: "Was the plaintiff, Elnita King, entitled to a lien upon the homestead of the defendants?" and say that all of the assignments can be properly discussed under that one proposition; and that is the proposition that counsel discusses in his brief. Counsel for defendant in error contends that all other errors, except the one stated, are waived because they are not argued separately. To this, we cannot agree. It is quite common and proper in a great many cases for counsel to group the several assignments of error under one head and where that head covers all of the assignments, they can be argued in this manner. Counsel further contends that the question of homestead is not in the case for the reason that it was not properly pleaded and could not be raised on an answer containing only a general de-

nial. That idea does not seem to have occurred to counsel for defendant in error during the trial of the case below, because the evidence offered to show the homestead character of the premises was not objected to or the question in any way raised. It is well settled in this jurisdiction that where evidence is introduced on an issue not clearly defined by the pleadings and no objection is made to it, and the pleadings could have been amended if objection had been made, that the objection to the evidence is waived by the parties against whom it is offered, and that question cannot be raised on appeal, but the court will decide the case as if the objection had been made and proper amendment made to the pleading. Mulhall v. Mulhall, 3 Okla. 252, 41 Pac. 577; Missouri, O. & G. Ry. Co. v. Collins, 47 Okla. 761, 150 Pac. 142; Gafford v. Davis et al., 58 Okla. 303, 158 Pac. 490. In the case of Missouri, O. & G. Ry. Co. v. Collins, above cited, we quote from the 8th paragraph of the syllabus as follows:

"Appeal and Error—Questions Presented for Review—Variance—Failure to Object. Though there be a variance between the allegations of a petition and the facts proven without objection at the trial, yet, if it be a case where an amendment to conform to the proof should have been allowed, the judgment will not be reversed solely because of such variance"

—and in the case of Gafford v. Davis et al., 58 Okla. 303, 158 Pac. 490, the court in the first paragraph of the syllabus says:

"Appeal and Error—Harmless Error—Variance. Though there be a variance between the allegations of a petition and the facts proven without objection at the trial, yet, if it is a case where an amendment to conform to the proof should have been allowed, the judgment will not be reversed solely because of such variance."

So it will be seen that if plaintiff desired to take advantage of the fact that the homestead was not specially pleaded, it was her duty to have objected to the testimony, and if defendants had amended so as to make the evidence proper, this error would not have been made.

We have given very careful consideration to the entire record in this case, including the briefs of both parties, and we are of the opinion that the conclusions reached by the court below are not sustained by the evidence in the case, and for that reason the case should be reversed, and the cause remanded for a new trial.

By the Court: It is so ordered.